CARNES, Circuit Judge,
concurring:
Concurring in the judgment and joining the opinion of the Court, I write separately to comment on where we are after the decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and to offer a suggestion to the district courts which may help avoid unnecessary resentence proceedings.
The Booker decision did not free us from the task of applying the Sentencing Guidelines, some provisions of which are mind-numbingly complex and others of which are just mind-numbing. Because the post-Booker regime requires “accurate advice” from the guidelines, we have held that the guidelines must be applied correctly. United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir.2005); United States v. Jordi, 418 F.3d 1212, 1215 (11th Cir.2005); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir.2005). The sword dance must still be done. Its steps can be intricate and the music unrelenting, as this case shows.
The defendant, a convicted felon, was caught red-handed in possession of two firearms. New crimes are easier to prove, and the defendant pleaded guilty to violating 18 U.S.C. § 922(g)(1). The most important facts for sentencing purposes are that the defendant had two prior felony convictions and an adult lifetime full of convictions for lesser offenses; he was on supervised release at the time of this crime; he possessed not one but two weapons when arrested; and he had shot a man four days before he was caught possessing these firearms. The district court sentenced the defendant to 96 months imprisonment, a reasonable sentence that, if anything, is on the light side in view of the facts. In a simpler — -and some would say more rational — system of sentencing and review, that would have been the end of it. But here we are vacating an unquestionably reasonable sentence and sending the case back to the district court for another sentence proceeding in which, after the defendant is hauled from prison into court again, and more scarce resources are spent, the district court will be free to pronounce the same 96-month sentence it imposed the first time around. And, of course, the defendant will have nothing to lose from appealing that sentence again.
We do all of this because the sentencing system in place forces us to review for any *774 perceived mistake each step the district court took in dancing its way through the intricate guidelines, advisory though they be. If convinced that the district court made it through the guidelines without a misstep, which is to say that it interpreted those provisions exactly the way we do, we also assess the reasonableness of the actual sentence imposed. The Booker decision has added that issue to those that we review. The reality is, however, that our reversals stem from interpretation of the guidelines, not from the unreasonableness of the sentences that district comets are imposing. Without much exception, in the post -Booker world we send cases back for resentencing because of some difference of opinion about the advice that the guidelines provided the district court, not because we think the sentence imposed is unreasonable.
This case is a good example of how we are spending our sentence review time. In the course of reviewing the sentence in this simple-crime case, we have decided three guidelines issues, at least two of which are difficult enough to have produced circuit splits. The first issue has to do with the meaning of one word of one clause of one subdivision of one subsection of one guideline. See U.S.S.G. § 2K2.1(c)(l)(“[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense ... ”) (emphasis added). As the Court explains, two other circuits appear to be on one side of this interpretive issue, one circuit is on the other side of it, and the opinion of yet another circuit is confusing enough that we cannot tell where it stands on the issue. The second issue is a different one involving the same cross-reference provision, § 2K2.1(c), and its relation to another provision, § 1B1.3, and that issue has also produced a circuit split.
The district court’s misstep, if any, involves not those two guidelines issues but instead the relevant conduct provision of § lB1.3(a)(2) and § 3D1.2(d), which § lB1.3(a)(2) incorporates by reference, and the effect of those provisions on the calculation of the advisory guidelines sentencing range in this case. Because of our reading of the guidelines provisions, we are setting aside a perfectly reasonable sentence and sending the case back for more proceedings which probably will result in the same sentence being imposed again. We do not even hold that the relevant conduct provision is inapplicable but instead direct the district court to examine other theories under which it might be applied. However that court resolves the relevant conduct issue on remand, whatever it decides the advisory guidelines range is in light of what we have said, it still must consider the same 18 U.S.C. § 3553(a) factors that it did initially in deciding the appropriate sentence in this case.
Therein runs a thread of madness through the method now in place. We review and decide close, hair-splitting interpretive issues arising from guidelines that are only advisory, and we set aside sentences even though the district court, once its “misunderstanding” of the guidelines is corrected, is free to impose the same sentence, and usually will do so. The guidelines are based upon decisions that the Sentencing Commission made after considering the factors set out in § 3553(a), which are the same factors the district court must consider in reaching its decision about the proper sentence in a case after it has calculated the Commission’s advice in the form of a guidelines range. If a district court misinterprets how the Sentencing Commission has resolved the application of the § 3553(a) factors in a given factual setting — if it misapplies the guidelines — then the court has *775 misread the advice it is to consider, but it still has the responsibility to decide for itself how the § 3553(a) factors apply to the case before it. If the federal court system had endless resources or light dockets, the post-Booker system of sentence review would make more sense, but the judicial world we inhabit is one of scarce resources burdened by heavy demands. Of course, neither this Court nor the district courts can change the Booker guidelines sentencing regime and the appellate review system that applies to it.
There is, however, something that the district courts can do to minimize pointless reversals and unnecessary do-overs of sentence proceedings. If a sentencing court is faced with a guidelines question that may become an issue on appeal, the court can indicate whether the advice that results from its resolution of that question makes a difference in the sentence. For example, in this case if the district court had stated that regardless of how the guidelines relevant conduct issue was resolved, it would consider the prior assault under § 3553(a)(1) & (2)(C) and on that basis would still impose the same 96-month sentence, we would not have to send this ease back for more sentence proceedings. The sentencing court might have stated that its ruling on the relevant conduct issue resulted in a guidelines range of 77 to 96 months, but that if it were wrong about that and the range was only 27 to 33 months, the sentence would still have been 96 months based on the § 3553(a) factors. On that basis we could and would have affirmed.
This suggestion is not some radical new idea born of frustration churned up by the Booker decision. The Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence. See Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 1120-21, 117 L.Ed.2d 341 (1992) (“[OJnce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court’s selection of the sentence imposed.”); United States v. Blas, 360 F.3d 1268, 1272-73 (11th Cir.2004) (declining to decide whether the district court misapplied the guidelines where the district court would have reached the same sentence regardless of any error); United States v. Hersh, 297 F.3d 1233, 1250-54 (11th Cir.2002) (holding that the sentence was “without error and need not be remanded for resentencing” even though the district court erred in applying the grouping guidelines because the district court had stated that it would have reached the same result through an upward departure if necessary); United States v. Kendrick, 22 F.3d 1066, 1068 (11th Cir.1994) (recognizing that if a guidelines error “did not affect the district court’s selection of the sentence imposed” the sentence is due to be affirmed) (internal citations and marks omitted).
Of course, if a sentencing court believes that how it resolves a particular guidelines issue does matter — that the sentence it imposes would have been different if the guidelines range had been — the court can note that for the record as well. That kind of information would help us focus our appellate attention on the issues that matter. And nothing I have said is meant to imply that a district court is not free to decide a disputed guidelines issue without mentioning, or even considering, whether the result of that decision actually affects the sentence it imposes following consideration of the § 3553(a) factors. It is the prerogative of sentencing courts to speak *776 or remain silent about such matters. The choice is theirs.